UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO JOAQUIN REICH,<br><br>                    Petitioner,<br><br>          v.<br><br>WARDEN OF SAN QUENTIN STATE PRISON, et al.,<br><br>                    Respondents. | Case No. 23-cv-06381-PCP<br><br>**ORDER DISMISSING PETITION WITH LEAVE TO AMEND, GRANTING MOTION TO PROCEED *IN FORMA PAUPERIS*, DENYING MOTIONS FOR PRELIMINARY INJUNCTION AND DEFAULT JUDGMENT**<br><br>Re: Dkt. Nos. 2, 4, 13-15 |

Antonio Reich, an inmate at the Mule Creek State Prison, filed this *pro se* action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. His petition is now before the Court for review pursuant to 28 U.S.C. § 2243 and Rule 4 of the Rules Governing Section 2254 Cases.

The Petition is dismissed with leave to amend.

## I.    BACKGROUND

Mr. Reich formerly was incarcerated at San Quentin State Prison ("SQSP"). Pet. at 2. On June 22, 2023, he was issued a rules violation for possession of drug paraphernalia and tattoo paraphernalia. *Id*. at 3; Dkt. No. 7, at 9.

On July 3, 2023, Mr. Reich was found guilty of possession of tattoo paraphernalia. *Id*. The hearing officer represented that "he's throwing the other RVR [for drug paraphernalia] out," and Mr. Reich "would get the 30 days back." Pet. at 3. On July 16, 2023, Mr. Reich had a second disciplinary hearing on the same two charges and was found guilty of both. *Id*. As punishment, he lost one year of good-time credit. *Id*.

Mr. Reich argues he was not "in possession" of drug or tattoo paraphernalia "under CDCR's Title 15 definitions of possessions." *Id*. at 2; *see also id*. at 6 (raising the same argument). When asked for "supporting cases, rules, or other authority," Mr. Reich cites two cases from the

1   California Supreme Court which he believes were violated. *See id*. at 3. In his request for

2   damages, Mr. Reich refers to "violations of plaintiff 14th Amendment violations etc." *Id*. at 4.

3        Mr. Reich filed the Petition on December 3, 2023. *See* Dkt. No. 1-1 at 2 (showing it was

4   handed to prison officials on that date); *see also Houston v. Lack*, 487 U.S. 266 (1988)

5   (announcing the mailbox rule for prisoners' habeas petitions). Exhibits in support of the Petition

6   were received and docketed on December 26, 2023. *See* Dkt. No. 7. On December 14, 2023, the

7   Court received another copy of the Petition, which the Clerk's Office docketed as a motion for

8   injunctive relief, and in which Mr. Reich asks the Court to "drop all charges." Dkt. No. 4. Mr.

9   Reich subsequently filed four letters, Dkt. Nos. 9–12, and three motions for default judgment, Dkt.

10  Nos. 13–15.

11       Mr. Reich seeks damages, release, and the firing of three SQSP officers. Pet. at 4.

12  **II.     Standard of Review**

13       This Court may entertain a petition for writ of habeas corpus "in behalf of a person in

14  custody pursuant to the judgment of a State court only on the ground that he is in custody in

15  violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A

16  district court considering an application for writ of habeas corpus shall "award the writ or issue an

17  order directing the respondent to show cause why the writ should not be granted, unless it appears

18  from the application that the applicant or person detained is not entitled thereto." 28 U.S.C.

19  § 2243. Summary dismissal is appropriate only where the allegations in the petition are vague or

20  conclusory, palpably incredible, or patently frivolous or false. *See Hendricks v. Vasquez*, 908 F.2d

21  490, 491 (9th Cir. 1990).

22  **III.    Analysis**

23       The Court dismisses, without leave to amend, Mr. Reich's requests for damages and for

24  SQSP employees to be terminated. Although Mr. Reich also fails to state a cognizable claim for

25  release, he will be allowed a second attempt to do so.

26       **A.     Request to Terminate Employees**

27       Mr. Reich asks the Court to order SQSP to fire three employees. There are two problems

28  with this request.

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1    First, the Court does not have the authority to direct SQSP's hiring and firing decisions.

2  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983) (correctional officials have broad discretionary

3  authority in the administration of a prison); *Toussaint v. McCarthy*, 801 F.2d 1080, 1086 (9th Cir.

4  1986) ("'The duty to protect inmates' constitutional rights, however, does not confer the power to

5  manage prisons, for which courts are ill-equipped, or the capacity to second-guess prison

6  administrators. Federal courts should not, in the name of the Constitution, become enmeshed in

7  the minutiae of prison operations. Our task is limited to enforcing constitutional standards and

8  does not embrace superintending prison administration.'") (quoting *Ruiz v. Estelle*, 679 F.2d 1115,

9  1126  (5th Cir. 1982)), *overruled on other grounds by Johnson v. Ryan*, 55 F.4th 1167, 1182 (9th

10 Cir. 2022).

11    Second, a habeas action is not an appropriate vehicle to challenge prison management

12 decisions. *See Hill v. McDonough*, 547 U.S. 573, 579 (2006) ("Federal law opens two main

13 avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. §

14 2254, and a complaint under the Civil Rights Act of 1871, Rev. Stat. § 1979, as amended, 42

15 U.S.C. § 1983. Challenges to the lawfulness of confinement or to particulars affecting its duration

16 are the province of habeas corpus.") (cleaned up). Thus, even if the Court had the power to effect a

17 change in prison management, that request should not be made in the instant action. [1]

18    **B.    Request for Damages**

19    Mr. Reich's request for damages is *Heck*-barred.

20    In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that, before

21 recovering damages for an allegedly unconstitutional conviction or imprisonment or other harm

22 caused by actions whose unlawfulness would render a conviction or sentence invalid, a

23 Section 1983 plaintiff must prove that the conviction or sentence has been reversed on direct

24 appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such

25

26 ───────────────

27 [1] There are a handful of cases where prisoners have brought a class action against CDCR for
systemic civil rights violations, which required administrative changes to remedy. Even in those
instances, courts appoint receivers to make management decisions. *See, e.g., Med. Dev. Int'l v.
California Dep't of Corr. & Rehab.*, 585 F.3d 1211, 1217 (9th Cir. 2009) (explaining that a

28 receiver had been put in charge of certain management decisions).

1    determination, or called into question by a federal court's issuance of a writ of habeas corpus. *See*

2    *id.* at 486–87. The prisoner in *Heck* sued county prosecutors and police investigators, alleging that

3    they "had engaged in an 'unlawful, unreasonable, and arbitrary investigation' leading to

4    [prisoner's] arrest; 'knowingly destroyed' evidence 'which was exculpatory in nature and could

5    have proved [prisoner's] innocence'; and caused 'an illegal and unlawful voice identification

6    procedure' to be used at petitioner's trial." *Id*. at 479. The Supreme Court held that, because relief

7    on those claims "would render a conviction or sentence invalid" and the prisoner's conviction had

8    not yet been set aside, the prisoner was barred from pursuing those Section 1983 claims. *See id*. at

9    487; *see also Skinner*, 562 U.S. at 536 (*Heck* barred claim that evidence unlawfully withheld); *Tye*

10   *v. Cnty. of Los Angeles*, 785 F. App'x 479, 480 (9th Cir. 2019) (same); *Wilson v. Clem*, 50 F.3d 19

11   (9th Cir. 1995) (unpublished) (*Heck* barred claims that defendants "introduce[ed] false evidence

12   against him at his criminal trial, elicit[ed] perjured testimony, and fail[ed] to correct perjured

13   testimony"). *Heck* applies to claims for damages arising from disciplinary proceedings, where the

14   disciplinary punishment lengthened the prisoner's sentence. *See Edwards v. Balisok*, 520 U.S.

15   641, 645 (1997) (applying *Heck* bar to claim that officials used unconstitutional procedures in a

16   disciplinary hearing that resulted in the deprivation of time credits where "the nature of the

17   challenge to the procedures [is] such as necessarily to imply the invalidity of the judgment").

18        Here, Mr. Reich seeks damages for his continued detention pursuant to a disciplinary

19   conviction which he believes to be invalid. *See generally* Pet. Because Mr. Reich's damages

20   request is predicated on the theory that his disciplinary conviction is invalid, his damages claim is

21   barred unless and until his conviction is voided. *See Edwards*, 520 U.S. at 641. Mr. Reich's

22   request for damages is therefore dismissed without leave to amend, but without prejudice to filing

23   a future action if he succeeds in proving his disciplinary conviction was invalid.

24        **C.    Request for release**

25        Mr. Reich is correct to pursue release in a habeas action. *See McDonough*, 547 U.S. at 579

26   ("Challenges to the lawfulness of confinement or to particulars affecting its duration are the

27   province of habeas corpus."). He cannot, however, obtain relief from a *federal* court if only *state*

28   law was violated. Violations of state law are not remediable on federal habeas review. *See*

United States District Court
Northern District of California

*Swarthout v. Cooke*, 562 U.S. 216, 222 (2011) (noting that "a 'mere error of state law' is not a denial of due process"); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (explaining that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) ("[A]lleged errors in the application of state law are not cognizable in federal habeas corpus.").

Here, Mr. Reich clearly and repeatedly cites provisions of California law which he believes the disciplinary proceedings violated. *See* Pet. at 2 (arguing the proceedings violated Cal. Code Regs. tit. 15, §§ 3006(c), 3016(e)); *id.* at 3 (arguing Mr. Reich was not in possession of contraband "under CDCR's Title 15 definitions of possessions" and citing California cases). Although Mr. Reich mentions the Fourteenth Amendment to the U.S. Constitution, he does so in his request for damages and does not explain how his right to due process was violated.[2] *See id.* at 4 ("[P]laintiff seeks monetary relief from the following CDCR c/o's and employees for their roles in flagrant violation of plaintiff 14th Amendment violations etc.").

Mr. Reich fails to state a claim because a federal habeas petitioner "may not . . . transform a state-law issue into a federal one merely by asserting a violation of due process." *Langford*, 110 F.3d at 1389. In a single case, the U.S. Supreme Court observed that a failure to follow state law might implicate the criminal defendant's federal right to due process. *See Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980). That case, however, dealt with events in a criminal trial, not prison disciplinary proceedings. In *Hicks*, Oklahoma law provided that a convicted defendant was entitled to have his punishment fixed by the jury. Hicks's jury had been instructed, in accordance with a habitual offender statute then in effect, that the jury had to assess the punishment at 40 years' imprisonment if it found defendant guilty. *See id.* at 344–45. The jury followed the instruction, imposing the mandatory 40-year term when it returned a guilty verdict. *Id.* at 345. Later, the Oklahoma habitual offender statute was declared unconstitutional in a separate case, leading Hicks to try to set aside his sentence. The state appellate court rejected Hicks's effort to

---

[2] The Court presumes Mr. Reich intended to claim that a violation of his federal right to due process rather than equal protection. *See* U.S. Const. amend. XIV (containing both a Due Process Clause and an Equal Protection Clause).

United States District Court
Northern District of California

have his sentence set aside, reasoning that he was not prejudiced by the impact of the unconstitutional habitual offender statute because his sentence was within the range of punishment that could have been imposed. *Id*. The U.S. Supreme Court determined that this analysis was erroneous. The Supreme Court explained that a convicted defendant was entitled under Oklahoma law to have his punishment fixed by the jury and that, without the unconstitutional statute, the jury could have imposed a sentence of as little as 10 years, so it was incorrect to say that the instruction that directed a 40-year sentence did not prejudice the defendant. *Id*. at 345–46. The Supreme Court rejected the argument that this was only a state law error:

> It is argued that all that is involved in this case is the denial of a procedural right of exclusively state concern. Where, however, a State has provided for the imposition of criminal punishment in the discretion of the trial jury, it is not correct to say that the defendant's interest in the exercise of that discretion is merely a matter of a state procedural law. The defendant in such a case has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion, and that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State.

*Id*. at 346 (citation omitted).

It is extremely doubtful that *Hicks* could support habeas relief for the events that occurred here. To do so would require extending *Hicks* from the context of calculating an appropriate sentence in a criminal trial to the entirely different context of examining whether prison disciplinary proceedings applied the correct state regulatory definitions. The Ninth Circuit has rejected such a broad reading of *Hicks* permitting habeas petitioners to characterize various other types of state law violations in different contexts as federal due process claims. *See Gonzalez v. Wong*, 667 F.3d 965, 995 (9th Cir. 2011) (observing that petitioner "reads *Hicks* too broadly" by invoking it to support a claim of prosecutorial misconduct during closing arguments) (citing *Chambers v. Bowersox*, 157 F.3d 560, 565 (8th Cir. 1998) (distinguishing *Hicks* and "reject[ing] the notion that every trial error . . . gives rise to a claim under the Due Process Clause")).

Ultimately, Mr. Reich's argument appears to be an attempt to make a state law claim into a federal one by labeling it a "due process" violation. This is impermissible. *See Langford*, 110 F.3d

6

United States District Court
Northern District of California

1    at 1389. Because Mr. Reich has not presented a federal claim, his Petition must be DISMISSED.

2         To the extent Mr. Reich intended to argue that the second disciplinary proceeding violated

3    the Double Jeopardy Clause, this claim would fail because the Double Jeopardy Clause does not

4    apply to prison disciplinary proceedings. *See United States v. Brown*, 59 F.3d 102, 103–04 (9th

5    Cir. 1995) (holding that the Clause did not bar criminal charges where prisoner had already been

6    punished in prison disciplinary proceedings with a loss of good-time credit and disciplinary

7    transfer); *see also id*. at 105 ("[W]ithholding of good time credit ... [does] not constitute

8    punishment for double jeopardy purposes[.]"); *United States v. Apker,* 419 F.2d 388, 388 (9th

9    Cir.1969) (holding that segregated confinement after escape attempt did not preclude criminal

10   prosecution for same conduct); *Baldovinos v. Copenhaver*, 680 F. App'x 640, 641 (9th Cir. 2017)

11   (rejecting habeas challenge to prison disciplinary proceedings) (citing *Brown*, 59 F.3d at 104–05);

12   *Johnson v. Coursey*, 487 F. App'x 327 (9th Cir. 2012) ("[T]he prohibition against double jeopardy

13   does not apply to prison disciplinary sanctions[.]"); *Johnson v. Gomez*, 161 F.3d 13 (9th Cir.

14   1998) (holding that the district court properly rejected a § 2254 petition because "prison

15   disciplinary proceedings resulting in the loss of good time credits are remedial in purpose and do

16   not constitute punishment for double jeopardy") (citing *Brown*, 59 F.3d at 104–05); *Jacobs v.

17   Angelone*, 107 F.3d 877 (9th Cir. 1997) (unpublished) ("Double jeopardy does not apply to prison

18   disciplinary proceedings.") *Buchanan v. Marshall*, 104 F.3d 365 (9th Cir. 1996) (unpublished)

19   (same).

20        Leave to amend will be granted so that Mr. Reich may attempt to allege claims for a

21   federal constitutional violation. To the extent Mr. Reich believed his federal right to due process

22   was violated, he must specify what guaranteed process was denied to him. *See, e.g.*, *Walpole v.

23   Hill*, 472 U.S. 445, 455 (1985)) (explaining that "some evidence" is part of the process due to a

24   prisoner); *see also id*. at 455–56 ("[T]he relevant question is whether there is any evidence in the

25   record that could support the conclusion reached by the disciplinary board."); *Wolff v. McDonnell,*

26   418 U.S. 539, 564–71 (1974) (requiring prisons to follow certain pre-hearing steps). Mr. Reich

27   should provide this information in plain English, rather than attempting to write in legalese.

28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### D.    Motions

Because Mr. Reich has not stated a cognizable claim for relief, it would be premature to grant any request for an injunction. His motion for injunctive relief is DENIED.

Because Mr. Reich has not stated a cognizable claim for relief, his Petition has not yet been served upon Respondent. *See generally* Dkt. Because Respondent has not yet been served, his time to respond has not yet arrived and default judgment would be inappropriate. *Cf. Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986) (entry of default may be appropriate after party has been served and failed to respond); *Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851 (9th Cir. 1992) ("A person is not bound by a judgment in a litigation to which he or she has not been made a party by service of process."); *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) ("A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4."). Mr. Reich's motions for entry of default are DENIED.

## IV.    Conclusion

The Petition is dismissed with leave to amend as to Mr. Reich's request for release. The Petition is dismissed without leave to amend as to Mr. Reich's request for damages and the termination of SQSP employees.

Mr. Reich's motions for injunctive relief and default judgment are DENIED.

Mr. Reich's *in forma pauperis* application is GRANTED. The initial partial filing fee is $0.50. *See* 28 U.S.C. § 1915(b)(1) (requiring a court to assess an initial filing fee of 20 percent of a prisoner's average monthly deposits or monthly balance, whichever is greater). A copy of this order and the attached instructions will be sent to Mr. Reich and the institution's trust account office.

Mr. Reich may file a FIRST AMENDED PETITION within **thirty-five days** from the date this order is filed. The first amended petition must include the caption and civil case number used in this order (CV 23-6381-PCP (PR)) and the words FIRST AMENDED PETITION on the first page. If Mr. Reich files a first amended petition, he must specify the claims he intends to pursue, and must allege facts that demonstrate he is entitled to relief on every claim. An amended pleading

supersedes the original pleading. *See London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981) ("[A] plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint."); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262–63 (9th Cir. 1992) (where an amended complaint did not name all the defendants to an action, they were no longer defendants).

**Failure to file an amended petition within thirty-five days and in accordance with this order will result in a finding that further amendment would be futile. If Mr. Reich fails to amend, this action will be dismissed with prejudice.**

It is Mr. Reich's responsibility to prosecute this case. Mr. Reich must keep the Court informed of any change of address by filing a separate paper with the Clerk headed "Notice of Change of Address," and must comply with the Court's orders in a timely fashion. Failure to do so will result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

**IT IS SO ORDERED**.

Dated: May 15, 2024

_____
P. CASEY PITTS
United States District Judge

United States District Court
Northern District of California

9

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**INSTRUCTIONS FOR PAYMENT OF PRISONER'S FILING FEE**

The prisoner shown as the plaintiff or petitioner on the attached order has filed a civil action in forma pauperis in this court and owes to the court a filing fee. Pursuant to 28 U.S.C. § 1915, the fee is to be paid as follows:

The initial partial filing fee listed on the attached order should be deducted by the prison trust account office from the prisoner's trust account and forwarded to the clerk of the court as the first installment payment on the filing fee. This amount is twenty percent of the greater of (a) the average monthly deposits to the prisoner's account for the 6-month period immediately preceding the filing of the complaint/petition or (b) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint/petition.

Thereafter, on a monthly basis, 20 percent of the preceding month's income credited to the prisoner's trust account should be deducted and forwarded to the court each time the amount in the account exceeds ten dollars ($10.00). The prison trust account office should continue to do this until the filing fee has been paid in full.

If the prisoner does not have sufficient funds in his/her account to pay the initial partial filing fee, the prison trust account office should forward the available funds, and carry the balance forward each month until the amount is fully paid.

If the prisoner has filed more than one complaint, (s)he is required to pay a filing fee for each case. The trust account office should make the monthly calculations and payments for each case in which it receives an order granting in forma pauperis and these instructions.

**The prisoner's name and case number must be noted on each remittance.** The initial partial filing fee is due **within thirty days** of the date of the attached order. Checks should be made payable to Clerk, U.S. District Court and sent to Prisoner Accounts Receivable, U.S. District Court, 450 Golden Gate Avenue, Box 36060, San Francisco, CA 94102.

cc:    Plaintiff/Petitioner